# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| JOSEPH POWELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 3:10-0060 |
| v. | ) |
| | ) Judge Haynes/Bryant |
| AUSTIN BODIE and | ) |
| LINDA OSBORNE, R.N., | ) |
| | ) |
| Defendants. | ) |

TO: The Honorable William J. Haynes, Jr.

## REPORT AND RECOMMENDATION

All pending motions have been referred to the undersigned Magistrate Judge for disposition or a report and recommendation as to disposition. (Docket Entry No. 39.) After disposing of several motions by order entered contemporaneously herewith, the remaining motions for consideration by the Court are: (1) Defendants' motion for summary judgment (Docket Entry No. 32); (2) Plaintiff's motion for leave to file an amended/supplemental complaint (Docket Entry No. 59); (3) Plaintiff's motion to amend and correct his proposed amended/supplemental complaint (Docket Entry No. 63); and (4) Plaintiff's motion to add relief (Docket Entry No. 65).

For the reasons stated below, the undersigned Magistrate Judge recommends that Defendants' motion for summary judgment be granted, Plaintiff's motion for leave to file an amended/supplemental complaint be denied, and, accordingly, that Plaintiff's motions to amend and correct his proposed amended/supplemental complaint and to add relief be denied as moot.

1

## Statement of the Case

The pro se Plaintiff, a prisoner proceeding in forma pauperis, filed this action against Defendants Austin Bodie and Linda Osborne, R.N., for violation of civil rights under 42 U.S.C. § 1983. Specifically, Plaintiff appears to allege a violation of his Eighth Amendment right to be free from cruel and unusual punishment by Defendants' deliberate indifference to his medical needs. (Docket Entry No. 1, Compl. at 3-4.) Plaintiff alleges that he had teeth pulled in November of 2009 that left gaps in his gums that prevented him from adequately chewing his food. (Docket Entry No. 1, Compl. at 3.) Plaintiff also alleges that he had a tooth that had broken leaving the remaining part of the tooth sharp, which led to cuts on his tongue when chewing and swallowing. (Docket Entry No. 1, Compl. at 3.) Plaintiff alleges that he signed up to see a dentist, but was not scheduled to see him, and that he filed a grievance about his inability to chew, but the grievance was ignored by Defendants Bodie and Osborne because correct protocol had been followed. (Docket Entry No. 1, Compl. at 3.) Plaintiff alleges that he is malnourished and facing gastrointestinal problems as a result of his inability to chew, and that Defendants' failure to schedule Plaintiff to see a dentist was reckless and has caused him harm. (Docket Entry No. 1, Compl. at 4.)

Plaintiff also contends that he is entitled to leave to file an amended or supplemental complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure to add parties and claims. (Docket Entry No. 59, Pl.'s Mot. Leave File Am. Compl. at 1.) In conjunction with his motion for leave to file an amended complaint, Plaintiff filed a proposed amended complaint, (Docket Entry No. 59-1, Am. Compl.), which he subsequently filed motions to amend and correct (Docket Entry No. 63) and to add relief (Docket Entry No. 65).

Defendants contend that they are entitled to summary judgment on Plaintiff's Eighth Amendment deliberate indifference claim against them because Plaintiff failed to exhaust all administrative remedies as required by 42 U.S.C. § 1997e-(a) of the Prison Litigation Reform Act ("PLRA"), and, even if Plaintiff did exhaust all administrative remedies, he cannot establish his claim of deliberate indifference against Defendants. (Docket Entry No. 33, Defs.' Mem. Supp. Mot. at 6-7.) Defendants next contend that Plaintiff is not entitled to leave to file an amended or supplemental complaint because Rule 15(c)'s relation back doctrine does not apply in this case, and because Defendants will suffer prejudice by the amendment, there has beeen undue delay, and amendment would be futile as the claims Plaintiff seeks to add are likely time-barred. (Docket Entry No. 62, Defs.' Resp. Opp. at 3-4.)

**Statement of Undisputed Facts**

Plaintiff arrived at the Criminal Justice Center ("CJC") on June 17, 2009. (Wilkes Aff. ¶ 3.) At all relevant times, Defendant Austin Bodie was employed as the Administrator of the CJC (Wilkes Aff. ¶ 4) and Defendant Linda Osborne was employed as a Registered Nurse by Correct Care Solutions, LLC, ("Correct Care"), which provides health care services for inmates at the CJC (Palmer Aff. ¶ 3).

Upon arrival at the CJC, Plaintiff underwent an intake health screening. (Docket Entry No. 32-3, Intake Health Screening). Plaintiff's intake health screening revealed that he suffered from Hepatitis-C, hypertension, and depression, but revealed no other ongoing health problems or conditions requiring immediate attention. (Docket Entry No. 32-3, Intake Health Screening). On the same date, a Mental Health Services Staff Referral Form was completed that indicated Plaintiff appeared to be intoxicated and suffering from depression. (Docket Entry No. 32-4, Mental Health Services Staff Referral Form.)

On June 22, 2009, Plaintiff submitted a Sick Call request, complaining of "loose teeth" and "pus in gums." (Docket Entry No. 32-5.) Plaintiff was scheduled to be seen on June 25, 2009, but the dental provider was unable to see the Plaintiff for disputed reasons. (See Docket Entry No. 32-7; Docket Entry No. 49, Powell Aff. ¶¶ 14-15.) Also, on June 22, Plaintiff underwent a medical history and physical assessment, in which he noted problems with his teeth, among other things, and was provided with dental education, along with other educational material, and scheduled for follow-up appointments. (Docket Entry No. 32-8, Medical History and Physical Assessment at 2.) Plaintiff was seen on June 25, 2009, by a mental health provider who noted a history of depression, but no immediate problems, and the Sick Call process was explained to Plaintiff, who agreed to seek assistance using the process if needed. (Docket Entry No. 32-9, Mental Health Progress Notes.)

On June 26, 2009, Plaintiff was evaluated for his dental pain and scheduled to see a dentist. (Docket Entry No. 32-10, Dental Pain at 1.) His treatment at that time included being placed on a soft diet for ninety days and prescription of an antibiotic. (Docket Entry No. 32-10, Provider Orders at 2.) On July 1, 2009, Plaintiff underwent a Chronic Care examination, but no complaints were noted at that time and Plaintiff admitted that he was not taking his chronic medications. (Docket Entry No. 32-13, Chronic Care at 1.) On July 13, 2009, Plaintiff filed a Sick Call request, complaining that his gums were infected and his teeth were loose and painful. (Docket Entry No. 32-14, Sick Call Request.) As a result, he was seen on July 16, 2009, for his dental pain and referred to the Dental Health Care Provider. (Docket Entry No. 32-15, Dental Pain at 1.) Plaintiff was seen by the dental provider on July 21, 2009, and consented to the extraction of three of his teeth. (Docket Entry No. 32-16, Dental Informed Consent at 1.) After

the extraction, Plaintiff was given instructions regarding care for his mouth. (Docket Entry No. 32-16, Dental Informed Consent at 3.)

On July 28, 2009, Plaintiff submitted another Sick Call request, complaining of pain in either his gums or jaw. (Docket Entry No. 32-17, Sick Call Request.) Plaintiff was seen for his pain on July 30, 2009, and was again referred to the Dental Health Care Provider and given medications to ease his pain. (Docket Entry No. 32-18, Dental Pain at 1, 3.) On July 31, 2009, the dental provider saw Plaintiff and extracted three more teeth. (Docket Entry No. 32-18, Dental Pain at 4.) On August 11, 2009, Plaintiff refused medicine because it made him "void too much." (Docket Entry No. 32-19, Refusal of Treatment.) On August 16, 2009, Plaintiff filed a mental Sick Call request complaining of depression and lack of sleep. (Docket Entry No. 32-20, Sick Call Request at 1.) After a consultation with Mental Health Services, Plaintiff was educated in relaxation and meditation methods. (Docket Entry No. 32-20, Sick Call Request at 2.) On October 1, 2009, Plaintiff underwent another Chronic Care examination, but did not complain of any oral pain and no problems or abnormalities were noted. (Docket Entry No. 32-21, Chronic Care.) However, on October 7, 2009, Plaintiff complained of abscesses on his arms, and the nurse noted that Plaintiff had multiple lesions on his arms, but there was no edema, pus, heat, or drainage. (Docket Entry No. 32-22, Common Skin Problems at 1.)

On October 14, 2009, Plaintiff filed another Sick Call request complaining of dental pain and teeth needing pulling. (Docket Entry No. 32-23, Sick Call Request at 1.) He was seen on October 16, 2009, and the nurse noted edema and infection to Plaintiff's lower gums. (Docket Entry No. 32-33, Sick Call Request at 2.) On October 21, 2009, Plaintiff had an Acute Care Visit and complained of dizziness associated with Lopid, a medication he was prescribed to reduce cholesterol and triglycerides, but did not complain of oral problems. (Docket Entry No. 32-24,

Acute Care Visit at 1, 3.) On October 22, 2009, Plaintiff underwent another dental examination, again complaining of dental pain, which revealed progressive decay and led to the extraction of two more of his teeth. (Docket Entry No. 32-25, Dental Standard Exam at 1-5.) Plaintiff did not request another Sick Call until December 20, 2009, in which he complained of difficulty chewing due to missing and broken teeth. (Docket Entry No. 32-26, Sick Call Request at 1.) He was seen on December 21, 2009, for dental pain and was referred to the dental health care provider after requesting the extraction of additional teeth. (Docket Entry No. 32-26, Sick Call Request at 2.)

Plaintiff filed two inmate grievances on December 23, 2009, the first stating that he was not satisfied with the food offerings on his soft/heart healthy diet and requesting oranges and peaches instead of apple sauce. (Docket Entry No. 32-29, Inmate Grievance Report.) The investigation officer denied the grievance, responding that Plaintiff would only be served foods that were contained in the approved diet menu, and Plaintiff timely appealed. (Docket Entry No. 32-29, Inmate Grievance Report.) The second grievance stated that a dental appointment "was supposed to be scheduled two (2) months ago" and that "[t]he problem is that I've teeth in my mouth that are uneven and prevent me from chewing my food. Also I've sharp edges on some of my teeth that cuts [sic] my tongue when I chew." (Docket Entry No. 32-27, Inmate Grievance Report.) Defendant Osborne responded to the grievance on December 28, 2009, stating that "Inmate was seen on 10/22 for dental pain, evaluated and treated by the dental department. He was seen for sick call on 12/21 for dental pain. He is to be seen per our dental protocal [sic]." (Docket Entry No. 32-27, Inmate Grievance Report.) Plaintiff did not appeal the unsustained grievance. (Docket Entry No. 32-27, Inmate Grievance Report.) Plaintiff filed another grievance on December 31, 2009, again complaining that his teeth had not been extracted as he requested.

6

(Docket Entry No. 32-28, Inmate Grievance Report.) Defendant Bodie responded on January 4, 2010, that "Mrs. Shavers with the metro health dept review[ed] your chart and she has determined that the care you have been provided has been adequate." Plaintiff again did not appeal the decision of this grievance. (Docket Entry No. 32-38, Inmate Grievance Report.) Plaintiff filed this action shortly thereafter on January 19, 2010. (Docket Entry No. 1, Compl.)

## Legal Analysis

A. <u>Defendants' Motion for Summary Judgment</u>

Defendants filed their motion for summary judgment on October 7, 2010, including a memorandum of law in support of their motion and a statement of undisputed facts. Plaintiff responded to Defendants' statement of undisputed facts (Docket Entry No. 49, at 11-17), but has not responded to the motion for summary judgment, despite being granted an extension of time in which to do so (Docket Entry No. 54, Agreed Order). However, "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded." <u>Carver v. Bunch</u>, 946 F.2d 451, 455 (6th Cir. 1991); <u>see</u> <u>also</u> <u>Stough v. Mayville Cmty. Schs.</u>, 138 F.3d 612, 614 (6th Cir. 1998). Rather, "[t]he court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden." <u>Carver</u>, 946 F.2d at 455.

    *1. Standard of Review*

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010). Facts are material if, as determined by substantive law, they "might affect the outcome of the suit." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A material

7

fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. Furthermore, there is no genuine issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," but if the evidence is "merely colorable" or "is not significantly probative, summary judgment may be granted." Id. at 249-50; Adickes v. S.H. Kress & Co., 398 U.S. 144, 153 (1970); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 290 (1968).

A moving party is entitled to judgment as a matter of law "against a [nonmoving] party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Once the moving party has discharged its burden of conclusively showing that no genuine issue of material fact exists, a nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts;" rather, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The court will then determine only whether there is a genuine issue for trial, viewing the evidence in the light most favorable to the non-moving party. Anderson, 477 U.S. at 249; Matsushita, 475 U.S. at 587.

*2. Plaintiff's Failure to Exhaust Administrative Remedies*

Defendants have raised an affirmative defense for failure to exhaust administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), in their motion for summary judgment. (Defs.' Mot. Summ. J. at 8-9.) Section 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1996).

Indeed, there is "no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007). Furthermore, the PLRA exhaustion requirement mandates proper exhaustion. Woodford v. Ngo, 548 U.S. 81, 93 (2006). Proper exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91.

The Sixth Circuit has determined that "[a]n inmate exhausts a claim by taking advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process…." Reed-Bey v. Pramstaller, 603 F.3d 322, 324 (6th Cir. 2010). A district court properly dismisses a claim for failure to exhaust administrative remedies when an inmate files a grievance that is denied and does not appeal the denial of the grievance before filing a complaint. Umbarger v. Corr. Med. Servs., 93 Fed. Appx. 734, 735-36 (6th Cir. Mar. 16, 2004). Likewise, "an inmate cannot simply fail to file a grievance or abandon the process before completion…." Hartsfield v. Vidor, 199 F.3d 305, 309 (6th Cir. 1999).  In this case, the administrative remedies available to Plaintiff were set forth in a Grievance Policy provided to all inmates in the Inmate Handbook received upon entering the CJC. (Wilkes Aff. ¶ 5; Docket Entry No. 32-2, Inmate Handbook at 5.) The Grievance Policy provides:

> If you have a complaint about a jail policy, practice, condition, or employee, ask for a grievance/appeal form, or write it on a plain paper with "GRIEVANCE" across the top in big letters. Put it in the grievance box in your area. You have ten days, including holidays and weekends, after the matter/incident you are complaining about arises to file a grievance. That time limit may be extended only for a good reason. You should get an answer within seven working days. If you don't, ask your case manager to check on it for you.
> Grievance appeals: If you think the answer to your grievance is unfair, you can appeal to the facility administrator. You must file your appeal within one week of receiving your

> original response. Get another grievance/appeal form from your case manager or correctional officer, or write your appeal on plain paper with "GRIEVANCE APPEAL" in big letters across the top. Put it in the grievance box.

(Docket Entry No. 32-2, Inmate Handbook at 5.)

Plaintiff relies on three grievances he filed. Plaintiff's grievance of December 23, 2009, regarding the failure of scheduling a dental appointment was appealable, but Plaintiff chose not to appeal Defendant Osborne's decision. (Docket Entry No. 32-27, Inmate Grievance Report.) Plaintiff filed another grievance regarding the same failure to schedule a dental appointment to have teeth pulled on December 31, 2009. That grievance was again unsustained, yet appealable, but Plaintiff chose not to appeal Defendant Bodie's decision. (Docket Entry No. 32-28, Inmate Grievance Report.) As such, Plaintiff did not properly exhaust his available administrative remedies because he did not appeal either unsustained grievance. Furthermore, even if the second grievance was intended by Plaintiff to operate as an appeal of the first grievance, he has still failed to properly exhaust his available administrative remedies because he has not followed the "critical procedural rules" of the CJC grievance process by completing the two-step grievance and appeal procedure. Woodford, 548 U.S. at 93; Reed-Bey, 603 F.3d at 324. In addition, while Plaintiff did exhaust his administrative remedies by appealing his grievance of December 23, 2009, regarding his dissatisfaction with the food served to him based upon his soft/heart healthy diet plan, this grievance is completely unrelated to Plaintiff's deliberate indifference claim regarding his dental care.

Because Defendants have met their burden to prove that there is no dispute that an administrative remedy was available through Plaintiff's previous proper use of the inmate grievance procedure and that Plaintiff did not pursue that administrative remedy for his deliberate indifference and inadequate care claims, summary judgment is appropriate. Napier v.

10

Laurel County, 636 F.3d 218, 226 (6th Cir. 2011). Thus, the undersigned Magistrate Judge finds that Defendants' motion for summary judgment should be granted, and Plaintiff's complaint should be dismissed without prejudice.

B. Plaintiff's Motion for Leave to File an Amended/Supplemental Complaint

Six months after Defendants filed their summary judgment motion, Plaintiff filed his motion to amend, seeking to add multiple new claims against multiple new defendants. A court should freely grant leave to a party to amend its pleadings when justice so requires. Fed. R. Civ. P. 15(a)(2) (2009). However, in determining whether to grant leave to amend, it is within the discretion of the judge to consider undue delay, prejudice to the opposing party, bad faith or dilatory motive, futility of the amendment, and whether the party has previously amended its pleadings. Foman v. Davis, 371 U.S. 178, 182 (1962); Seals v. Quarterly County Court, 526 F.2d 216, 219 (6th Cir. 1975). Moreover, in determining whether to grant leave to file an amended complaint, at least two Circuits have considered whether "a plaintiff has sought leave to amend after the defendant filed a successful motion for summary judgment." Spolnik v. Guardian Life Ins. Co., 94 F. Supp. 2d 998, 1004-05 (S.D. Ind. 2000) (quoting Sanders v. Venture Stores, Inc., 56 F.3d 771, 773-75 (7th Cir. 1995)); see also Carter v. Supermarkets Gen. Corp., 684 F.2d 187, 192 (1st Cir. 1982) (finding plaintiff's belated attempt to amend her complaint in response to the defendant's motion for summary judgment as a valid reason for denying leave to amend). In Spolnik, the Court determined that justice did not require leave to amend where the defendant filed a motion for summary judgment and the plaintiff followed a little over a month later with a motion for leave to amend his complaint. Id. at 1005. The Court noted that "[t]he timing of the motion for leave is highly suspect" where the original complaint had been filed more than two

11

years before the motion for leave to amend was filed. Id. It was "apparent to the court that the motion for leave was filed in response to and in order to circumvent the inevitable outcome of [the] summary judgment motion." Id.

In this case, the undersigned Magistrate Judge finds that the factors considered in determining whether to grant Plaintiff leave to file an amended complaint overwhelmingly weigh against Plaintiff. Plaintiff has provided no explanation for his undue delay in filing his motion for leave to amend his complaint over a year after filing his original complaint. In fact, Plaintiff expressed his intent to file an amended complaint as early as June 6, 2010, in a letter to Defendants' counsel. (Docket Entry 62-1, Pl.'s Letter to Defs.) However, Plaintiff waited until April 1, 2011, to file his motion after Defendants had already filed a motion for summary judgment. (Docket Entry No. 59, Pl.'s Mot. Leave.) Plaintiff's timing is "highly suspect" and his motion for leave to amend appears to have been filed "in order to circumvent the inevitable outcome of [the] summary judgment motion." Spolnik, 94 F. Supp. 2d at 1005.

Most importantly, Plaintiff's proposed amendment will be futile as summary judgment for Defendants is appropriate in this case. It also appears that Plaintiff's proposed amended complaint (Docket Entry No. 59-1, Am. Compl. at 5-15) will be futile as the claims will be barred by the one-year statute of limitations for § 1983 claims because Plaintiff had or should have had actual knowledge of his damages related to these claims before April 1, 2010. Tenn. Code Ann. § 28-3-104(a)(3); Roberson v. Tennessee, 399 F.3d 792, 794 (6th Cir. 2005); Hughes v. Vanderbilt Univ., 215 F.3d 543, 547 (6th Cir. 2000). Furthermore, Plaintiff's amendments cannot relate back pursuant to Rule 15(c)(1)(C) of the Federal Rules of Civil Procedure because Plaintiff was not seeking to correct a misnomer, but to add parties to the complaint. Force v. City of Memphis, 101 F.3d 702 (Table), 1996 WL 665609, at *4 (6th Cir. Nov. 14, 1996); In re Kent

Holland Die Casting & Plating, Inc., 928 F.2d 1448, 1450 (6th Cir. 1991). A district court properly denies leave to amend when amendment would be futile because the additional claims are time-barred and there can be no relation back to the original complaint. Beatty v. Sunbeam Corp., 110 Fed. Appx. 677, at *1 (6th Cir. Oct. 6, 2004).

In addition, Defendants would be unduly prejudiced by allowing Plaintiff to amend his complaint. Defendants had already filed a viable motion for summary judgment and granted Plaintiff addition time to respond to the motion, which he did not do. Furthermore, Plaintiff seeks to add several new parties and claims, many of which are unrelated to Defendants, which will require Defendants to engage in additional discovery and incur additional costs. (Docket Entry No. 59-1, Am. Compl. at 5-15.) Allowing Plaintiff to amend his complaint at this stage in the litigation will substantially prejudice the Defendants. Wade v. Knoxville Utils. Bd., 259 F.3d 452, 459 (6th Cir. 2001).

Thus, the undersigned Magistrate Judge finds that Plaintiff's Motion for Leave to File an Amended/Supplemental Complaint should be denied as Plaintiff has caused undue delay by the late filing of his motion, amendment would be futile, and allowing amendment would substantially prejudice Defendants. Accordingly, Plaintiff's motions to amend/correct his proposed amended complaint (Docket Entry No. 63) and to add relief (Docket Entry No. 65) should also be denied.

## **RECOMMENDATION**

For the reasons stated above, the undersigned Magistrate Judge **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** and Plaintiff's motions for leave to file an amended/supplemental complaint, to amend/correct amended complaint, and to add relief be **DENIED**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from service of this Report and Recommendation in which to file any written objections to this Recommendation, with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).

**ENTERED** this 21st day of June, 2011.

       s/ John S. Bryant
       JOHN S. BRYANT
       United States Magistrate Judge